UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEX MARTINEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION,<br><br>        Defendant. | Civil Action No. 20-2726 (APM) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Plaintiff Alex Martinez ("Plaintiff") seeks review of the denial by U.S. Customs and Border Protection ("CBP") of two applications to participate in CBP's NEXUS program—a program that provides pre-approved low-risk travelers expedited processing at designated ports of entry in the United States and Canada. Plaintiff's complaint, at best, can be generously construed as attempting to assert an arbitrary and capricious claim under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, based on CBP's denial of his applications.

The Court, however, lacks jurisdiction because the APA does not authorize review of CBP's decision, which is subject to its sole discretion. Moreover, although Plaintiff uses the words "trespasses" and "negligent" in his complaint, Plaintiff has failed to plausibly allege a tort claim. Even if Plaintiff had alleged a tort claim, he has failed to allege that he exhausted his administrative remedies under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-80. Accordingly, the Court should dismiss Plaintiff's complaint.

## BACKGROUND

**I.     The NEXUS Trusted Traveler Program**

CBP operates four Trusted Traveler Programs—Secure Electronic Network for Travelers Rapid Inspection ("SENTRI"), NEXUS, Free and Secure Trade ("FAST"), and Global Entry— "that provide pre-approved, low-risk travelers with facilitated processing into the U.S. through dedicated lanes and kiosks." Acosta Decl. ¶ 6. As relevant here, the NEXUS program, which is administered jointly by the United States and Canada, was established in 2002 and "allows pre-approved low-risk travelers expedited processing for travel between the United States and Canada at dedicated processing lanes, at designated northern border ports of entry, at NEXUS kiosks at U.S. preclearance airports in Canada, and at marine reporting locations." *See* 75 Fed. Reg. 82,202, 82,202 (Dec. 29, 2010); *see also* 8 U.S.C. § 1753. "NEXUS is a reciprocal program that requires that applicants be interviewed by officers from both CBP and the [Canada Border Services Agency] and approved independently by each agency." Acosta Decl. ¶ 8.

Pertinent to CBP, persons interested in participating in the NEXUS program and applying to do so with CBP must apply through the Trusted Traveler Program website (https://ttp.cbp.dhs.gov).[1] Acosta Decl. ¶ 9; *See* 85 Fed. Reg. 55597 (Sept. 9, 2020). CBP officers then review the applicant's information and check it against various government databases. Acosta Decl. ¶ 9. Applicants with complete applications that meet the eligibility criteria are notified that they have been conditionally approved and can schedule a personal interview at a CBP Enrollment Center. Acosta Decl. ¶ 9; *see* 74 Fed. Reg. 59934 (Nov. 19, 2009). The final approval for NEXUS membership is contingent on the final decisions regarding the vetting of the application, the

---

[1]     The application was previously submitted through CBP's Global Online Enrollment System ("GOES") (https://goes-app.cbp.dhs.gov/). *See* 85 Fed. Reg. at 55,597.

submission of fingerprints, and the results of the interview. Acosta Decl. ¶ 9. If an applicant obtains final approval to participate in the NEXUS program, membership is "valid for five years, after which the member must re-apply and undergo additional vetting." Acosta Decl. ¶ 9.

CBP, however, can deny an application for participation in the NEXUS program or revoke membership if the applicant cannot satisfy CBP of his or her low-risk status or meet other program requirements. *See* 74 Fed. Reg. 59,935 (Nov. 19, 2009). "If an applicant believes that CBP's decision is based on incomplete or incorrect information, he or she may submit a request for reconsideration by the CBP Ombudsman." Acosta Decl. ¶ 16. "The Ombudsman will review the decision to deny or revoke membership and any additional information the applicant wishes to submit and will decide whether approval or reinstatement is warranted." Acosta Decl. ¶ 16.

## II.     Factual Background

Plaintiff, a resident of Canada, *see generally,* Compl., applied for membership in the NEXUS program on February 13, 2019. Acosta Decl. ¶ 17. CBP conditionally approved that application and invited Plaintiff to schedule an interview at an Enrollment Center, which Plaintiff scheduled for November 12, 2019. Acosta Decl. ¶ 17. During his interview, Plaintiff "claimed that he had been unemployed since 2012 and that he was working for free to uncover cross border corruption worth 2 billion dollars." Acosta Decl. ¶ 17. Plaintiff also stated that "he needed a NEXUS card because he wanted to collect his 2 billion dollars." Acosta Decl. ¶ 17. On November 15, 2019, CBP denied Plaintiff's application because Plaintiff had not assured CBP of his "low-risk status." Acosta Decl. ¶ 17. The same day, Plaintiff requested that the Ombudsman reconsider the determination. Acosta Decl. ¶ 18. The CBP Ombudsman sustained the Enrollment Center's determination on December 11, 2019. Acosta Decl. ¶ 18.

Plaintiff submitted another application to participate in the NEXUS program on December 14, 2019. Acosta Decl. ¶ 19. CBP denied that application on September 16, 2020, after it conducted

a risk assessment and determined that Plaintiff "did not qualify as low risk based on information in [Plaintiff's] pending application as well as the assessing officers' comments regarding [Plaintiff's] previous February 13, 2019 application." Acosta Decl. ¶ 19. On September 17, 2020, Plaintiff requested that the Ombudsman reconsider that determination. Acosta Decl. ¶ 20. The Ombudsman sustained the determination on September 20, 2020. Acosta Decl. ¶ 20.

### III.   Procedural History

On September 20, 2020, Plaintiff commenced this action. *See* Compl. (ECF No. 1). He seeks review of the rejections of his applications for participation in the NEXUS program, which he claims "occurred without merit and justification," Compl. at Relief, because he "has no criminal record, files[] or[] issues that would prevent membership in the NEXUS Trusted Travelers Program." Compl. at Statement of Claim. Plaintiff further claims that he seeks "punitive damages" for the "trespasses caused" by "losses in trade and other opportunities as a result of the negligent and damaging probe" because "[n]ews of the rejection circulated throughout the industry and . . .[his] community." Compl. at Relief.

### LEGAL STANDARDS

### I.   Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a court must dismiss a case in the absence of a plaintiff proving, in response to a motion to dismiss for lack of subject matter jurisdiction, that the Court has jurisdiction to hear his claims. *Marine Wholesale & Warehouse Co. v. United States*, 315 F. Supp. 3d 498, 508-09 (D.D.C. 2018); *In re Sci. Applications Int'l Corp. ("SAIC") Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 22 (D.D.C. 2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (other citation omitted). "When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and 'construe the complaint liberally, granting [the]

plaintiff the benefit of all inferences that can be derived from the facts alleged and upon such facts determine jurisdictional questions.'" *Marine Wholesale*, 315 F. Supp. 3d at 509 (quoting *Am. Nat'l Ins. Co v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)) (other citation and internal quotation marks omitted). "The Court need not accept as true, however, 'a legal conclusion couched as a factual allegation,' nor an inference unsupported by the facts set forth in the Complaint." *SAIC*, 45 F. Supp. 3d at 22 (quoting *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006)) (other citation omitted). "Additionally, . . . the Court 'may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.'" *SAIC*, 45 F. Supp. 3d at 23 (quoting *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

### II.     Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must have 'facial plausibility,' meaning it must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In evaluating a Rule 12(b)(6) motion, although the Court must assume all facts to be true and grant the plaintiff the benefit of all reasonable inferences, the "[f]actual allegations . . . must still 'be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he Court need not accept inferences drawn by [a] plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Id.* (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). "In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier*

*Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

Moreover, "[i]t is well established that '[c]ourts must construe *pro se* filings liberally.'" *Reiff v. United States*, 107 F. Supp. 3d 83, 86 (D.D.C. 2015) (quoting *Richardson v. United States*, 193 F.3d 545, 548 (1999)). "However, if the facts alleged, which must be taken as true, nonetheless fail to establish that a pro se plaintiff has stated a claim upon which relief can be granted, the Rule 12(b)(6) motion must be granted." *Id.* (citing *Am. Chemistry Council*, *Inc. v. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013)).

## ARGUMENT

### I. The Court Lacks Jurisdiction to Review CBP's Denial of Plaintiff's NEXUS Applications Under the APA Because CBP's Decisions Are Immune from Suit.

"Sovereign immunity shields the federal government and its agencies from suit and is 'jurisdictional in nature.'" *Atchison v. U.S. Dist. Courts*, 190 F. Supp. 3d 78, 88 (D.D.C. 2016) (quoting *Am. Road & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 79 (D.D.C. 2012)) (other citation omitted). "If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Id.* (quoting *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013)) (other citation omitted).

Plaintiff's allegations are insufficient to establish that the government expressly waived immunity for the Court to review CBP's denial of his applications to participate in the NEXUS program. *See Atchison*, 190 F. Supp. 3d at 88 (wavier of immunity "must be unequivocally expressed in statutory text, and will not be implied.") (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Although Plaintiff does not cite to it, he appears to seek review under the APA, which permits courts to set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). However, the APA does not waive

immunity where "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), or a plaintiff is seeking monetary damages, *see* 5 U.S.C. § 702 (allowing for "relief other than money damages"); *Emory v. United Air Lines*, *Inc.*, 720 F.3d 915, 921 (D.C. Cir. 2013) (APA does not waive sovereign immunity for an action seeking damages against the United States).

Agency actions are committed to agency discretion by law "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Roberts v. Napolitano*, 792 F. Supp. 2d 67, 73 (D.D.C. 2011) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)) (other citation omitted). "Judicial review is inappropriate because courts have 'no meaningful standard against which to judge the agency's exercise of discretion'" and "[t]hus, statutes authorizing the agency's authority should be interpreted to have 'committed the decision-making to the agency's judgment absolutely.'" *Id*.

*Roberts* is instructive. There, the plaintiff challenged the denial of his application to participate in CBP's Global Entry program due to a pending misdemeanor charge. 792 F. Supp. 2d at 70. The Court determined that it was "precluded from reviewing the . . . denial of plaintiff's Global Entry application under the APA because eligibility for the program is committed solely to . . . CBP's discretion by law." *Id*. at 73. The Court explained that the Intelligence Reform and Terrorism Prevention Act of 2004 instructs the Secretary of the Department of Homeland Security "to 'initiate a rulemaking to establish the [Global Entry] program [and] criteria for participation,' and [to] ensure that the program 'includes as many participants as practicable by . . . providing applicants with clear and consistent eligibility guidelines[.]'" *Id.* That said, the Court noted that the Act itself is silent on the criteria that the Department of Homeland Security should use in approving applications, which "indicates that Congress committed to the defendants the sole

discretion to determine eligibility guidelines and evaluate applicants." *Id*. (quoting 8 U.S.C. §1365b(k)(3)(C), (E)).

So, too, should the Court find that Congress committed to CBP's discretion the determination of eligibility to participate in the NEXUS program. CBP administers the NEXUS program pursuant to 8 U.S.C. § 1753(a), *see* Acosta Decl. ¶ 8 n.1, which provides:

> United States border inspections agencies, including the Immigration and Naturalization Service, acting jointly and under an agreement of cooperation with the Government of Canada, *may conduct joint United States-Canada inspections projects on the international border between the two countries*. Each such project *may provide alternative inspections services* and shall undertake to harmonize the criteria for inspections applied by the two countries in implementing those projects.

8 U.S.C. § 1753(a) (emphasis added).[2] Like the act at issue in *Roberts*, 8 U.S.C. § 1753 is silent on the criteria an applicant must satisfy to gain approval to participate in the NEXUS program—a "project" under 8 U.S.C. § 1753, *see* 85 Fed. Reg. 55606 (identifying the NEXUS program as a project)—leaving this Court with "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830. Importantly, 8 U.S.C. § 1753(c) states, in turn, that the APA "shall not apply to fee setting for services and other administrative requirements relating to projects described in subsection (a)[.]"

Although CBP has developed eligibility criteria, which it has included in a CBP regulation, Federal Register Notices, and on its website, *see* Acosta Decl. ¶ 10 n.2, those criteria do not function to create a judicially manageable standard for review of CBP's determination on an

---

[2]   On March 1, 2003, Congress abolished the Immigration and Naturalization Service. Pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, that agency's functions were transferred to three separate agencies within the newly created Department of Homeland Security: U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement, and U.S. Customs and Border Protection. *See Kaur v. Chertoff*, 489 F. Supp. 2d 52, 56 n.5 (D.D.C. 2007), *remanded on other grounds*, 296 F. App'x 80 (D.C. Cir. 2008). U.S. Customs and Border Protection currently operates the NEXUS program. *See* NEXUS, http://www.cbp.gov/travel/trusted-traveler-programs/nexus (last visited Apr. 5, 2021).

application to participate in the NEXUS program. To the contrary, they render an individual ineligible to participate in the NEXUS program if CBP, at its sole discretion, determines that the individual is not a low-risk traveler. *See* Utilization of Global Entry Kiosks by NEXUS and SENTRI Participants, 75 Fed. Reg. 82202, December 29, 2010 (stating that an individual may be disqualified from the program if he or she "cannot satisfy CBP of his or her low-risk status or meet other NEXUS program requirements."); https://www.cbp.gov/travel/trusted-traveler-programs/nexus/nexus-eligibility (same). Thus, this Court lacks jurisdiction to entertain Plaintiff's complaint under the APA.

## II. Plaintiff Fails to State a Plausible Tort Claim.

Plaintiff has failed to state a claim to relief in tort that is plausible on its face. *Twombly*, 550 U.S. at 555. This "plausibility" standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. Plaintiff's tort claim is not "plausible" on its face as he has failed to allege any viable cause of action allowing him to bring suit against the government. Plaintiff's allegations mention negligence and trespass but provide no factual detail that would allow him to pass the "plausibility" standard. Accordingly, Plaintiff's complaint to the extent that it may be construed as a tort should be dismissed. Moreover, the Supreme Court has held that the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies. *Simkins v. District of Columbia,* 108 F.3d 366, 371 (D.C. Cir. 1997) (quoting *McNeil v. United States*, 508 U.S. 113 (1993)); *see also* 28 U.S.C. 2675(a). Plaintiff has failed to plead that any such administrative claim was brought.

- 9 -

**CONCLUSION**

For the foregoing reasons, the Court should dismiss this case.

Dated: April 5, 2021
Washington, DC

          Respectfully submitted,

          CHANNING D. PHILLIPS, D.C. Bar #415793
          Acting United States Attorney

          BRIAN P. HUDAK
          Acting Chief, Civil Division


By:     /s/ *Michael A. Tilghman II*
          MICHAEL A. TILGHMAN II
          D.C. Bar #988441
          Assistant United States Attorney
          555 Fourth Street, NW
          Washington, DC 20530
          (202) 252-7113
          Michael.Tilghman@usdoj.gov

          *Attorneys for the United States of America*