UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEX MARTINEZ,<br><br>   Plaintiff,<br><br>  v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION,<br><br>   Defendant. | Civil Action No. 20-2726 (APM) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

All that remains in this case is the claim Plaintiff Alex Martinez ("Plaintiff") asserts under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq*. Specifically, Plaintiff seeks review of the denial by U.S. Customs and Border Protection ("CBP") of two applications he submitted to participate in CBP's NEXUS program—a program that provides pre-approved, low-risk travelers expedited processing at designated locations in the United States and Canada. The administrative record ("AR"), however, supports CBP's determination that Plaintiff failed to assure it of his low risk to border and national security and therefore CBP properly denied his applications. Accordingly, the Court should grant CBP judgment on Plaintiff's APA claim.

**BACKGROUND**

**I. The NEXUS Trusted Traveler Program**

CBP is a component of the Department of Homeland Security, which is required to "establish an international registered traveler program . . . to expedite the screening and processing of international travelers, including United States Citizens and residents, who enter and exit the United States." 8 U.S.C. § 1365b(k)(3)(A). Consistent with this requirement, CBP operates four

Trusted Traveler Programs—Secure Electronic Network for Travelers Rapid Inspection ("SENTRI"), NEXUS, Free and Secure Trade ("FAST"), and Global Entry—"that provide pre-approved, low-risk travelers with facilitated processing into the U.S. through dedicated lanes and kiosks." Acosta Decl. (ECF No. 15-2) ¶ 6.[1] "Enrollment in these programs enables CBP to expedite the inspection process for pre-vetted low-risk travelers [who CBP deems to present a low risk to border and national security], allowing CBP to focus resources toward providing additional scrutiny to individuals who present a higher risk." Acosta Decl. ¶ 7.

As relevant here, the NEXUS program, which is administered jointly by the United States and Canada, was established in 2002 and "allows pre-approved low-risk travelers expedited processing for travel between the United States and Canada at dedicated processing lanes, at designated northern border ports of entry, at NEXUS kiosks at U.S. preclearance airports in Canada, and at marine reporting locations." *See Utilization of Global Entry Kiosks by NEXUS & SENTRI Participants*, 75 Fed. Reg. 82,202, 82,202 (Dec. 29, 2010); *see also* 8 U.S.C. § 1753. "NEXUS members enjoy the privilege of expedited customs and, as applicable, immigration, clearance when traveling between Canada and the United States, in many cases with very limited interaction with a CBP Officer." Acosta Decl. ¶ 13. "NEXUS is a reciprocal program that requires that applicants be interviewed by officers from both CBP and the [Canada Border Services Agency] and approved independently by each agency." Acosta Decl. ¶ 8.

Pertinent to CBP, persons interested in participating in the NEXUS program and applying to do so with CBP must apply through the Trusted Traveler Program website (https://ttp.cbp.dhs.

---

[1] The Declaration of Pete R. Acosta and the Declaration of Matthew S. Davies are relied on to provide background for the NEXUS program and as clarifying material supportive of Defendant's Motion for Summary Judgment. *See Int'l Bhd. of Teamsters v. NLRB*, 546 F.2d 989, 992 (D.C. Cir. 1976) (holding that an agency is authorized to provide additional explanation for its decision in an APA case).

gov).[2] Acosta Decl. ¶ 9; *see also* 75 Fed. Reg. at 82,202 (discussing NEXUS application and adjudication processes); *Harmonization of the Fees & Application Procedures for the Global Entry & SENTRI Programs & Other Changes*, 85 Fed. Reg. 55,597, 55,598 (Sept. 9, 2020) (discussing how the application and assessment procedures for all CBP Trusted Traveler Programs have aligned over time). Applicants with complete applications that meet the eligibility criteria upon initial vetting are notified that they have been conditionally approved and can schedule a personal interview at a CBP Enrollment Center. *See* 74 Fed. Reg. 59,934 (Nov. 19, 2009); *see also* 85 Fed. Reg. at 55,598; *see also* https://www.cbp.gov/travel/trusted-traveler-programs/nexus/how-apply. "CBP uses the interview to inform its low-risk determination." Acosta Decl. ¶ 15. The final approval for NEXUS membership is contingent on the final decisions regarding the vetting of the application, the submission of fingerprints, and the results of the interview. Acosta Decl. ¶ 9.

If an applicant obtains final approval to participate in the NEXUS program, membership is "valid for five years, after which the member must re-apply and undergo additional vetting." Acosta Decl. ¶ 9; *see also* https://www.cbp.gov/travel/trusted-traveler-programs/nexus/how-apply. Simply put, "[i]n approving an applicant for membership in [the] NEXUS [program], CBP must be assured that the applicant will adhere to program rules and requirements; immigration and customs laws; and directions by law enforcement officials as well as be assured that the applicant will not otherwise engage in behavior that could potentially endanger national security or border security." Davies Decl. ¶ 9.

CBP can deny an application for participation in the NEXUS program or revoke membership if the applicant cannot satisfy CBP of his or her low-risk status or meet other program

---

[2] The application was previously submitted through CBP's Global Online Enrollment System (https://goes-app.cbp.dhs.gov/). *See* 85 Fed. Reg. at 55,597.

- 3 -

requirements. *See* 75 Fed. Reg. at 82,202; *see also* 74 Fed. Reg. 59,935 (Nov. 19, 2009); https://www.cbp.gov/travel/trusted-traveler-programs/nexus/nexus-eligibility. "If an applicant believes that CBP's decision is based on incomplete or incorrect information, he or she may submit a request for reconsideration by the CBP Ombudsman." Acosta Decl. ¶ 16; *see also* https://www.cbp.gov/travel/trusted-traveler-programs/program-denials. "The Ombudsman will review the decision to deny or revoke membership and any additional information the applicant wishes to submit and will decide whether approval or reinstatement is warranted." Acosta Decl. ¶ 16.

## II.     Factual Background

Plaintiff, a resident of Canada, *see generally,* Compl., applied online for membership in the NEXUS program on February 13, 2019. Davies Decl. ¶ 20; AR at USCBP000003. "CBP began initial vetting of [Plaintiff] using the information provided in his application, as well as certain systems checks, such as for border crossing records." Davies Decl. ¶ 20 (citing AR at USCBP000014). CBP conditionally approved that application after initial vetting and invited Plaintiff to schedule an interview at an Enrollment Center for purposes of obtaining "more information to inform whether Plaintiff should be granted access to the NEXUS program"; Plaintiff scheduled the interview for November 12, 2019. Davies Decl. ¶ 21; AR at USCBP000004.

During his November 12, 2019 interview, Plaintiff claimed that: he "has been unemployed since 2012, . . . [was] working for free to uncover cross border corruption, [and] claim[ed] th[e] case is worth 2 billion dollars." AR at USCBP000004; Davies Decl. ¶ 22. Plaintiff also stated that "he needed a [NEXUS] card because he wants to collect his 2 billion dollars," and "attempted to give CBP a USB drive [he claimed] had 'material evidence' on it against [Canada Border Services Agency] and the [Royal Canadian Mounted Police], [which] the officer refused to accept." AR at USCBP000004; *see also* Davies Decl. ¶ 22. ▇▇▇▇ Plaintiff "indicated during the interview that

he does not take any medication, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Davies Decl. ¶ 22.

On November 13, 2019, Plaintiff submitted four documents: (1) a letter dated November 13, 2019 addressed to CBP; (2) a letter dated November 11, 2019 addressed to CBP; (3) an application for judicial review filed against the Royal Canadian Mounted Police and Canada Border Services Agency (the "respondents") on October 28, 2019 in the Federal Court of Canada; and (4) a letter dated October 22, 2019 addressed to the Victims Fund Manager of the Canadian Department of Justice, with a cover fax sheet. Davies Decl. ¶ 24; AR at USCBP00016-27. Plaintiff's November 13, 2019 letter purported to be Plaintiff's response a request from CBP for additional information. AR at USCBP00023. Therein, Plaintiff stated that CBP's request for a letter from Plaintiff's employer "outlining the details of [Plaintiff's] travel to the United States . . . is an error, as [the CBP Officer at his interview] was advised several times that I am not traveling to the United States for employment purposes[,] but for travel and leisure."[3] AR at USCBP00023. Plaintiff complained about CBP's alleged refusal to "process the NEXUS/Global Entry card on the basis that a Passport was not provided to [the CBP Officer] along with [Plaintiff's] other Government Issued Identification such as [Plaintiff's] Drivers License and Canadian Citizenship Card." AR at USCBP00023. Plaintiff considered CBP's requests "excessive" and requested that CBP "process the NEXUS/Global Entry Card as quickly as possible[.]"AR at USCBP00023.

In his November 11, 2019 letter, Plaintiff claimed he was attaching "a copy of Affidavit evidence from a case and file that caused an international incident and has misled several of your Agents and Staff, as part of a Public Mischief, Criminal Negligence, Attempted Murder and

---

[3]   "Following a reasonable search, CBP has not identified any record indicating that such a request for additional information was made to" Plaintiff. Davies Decl. ¶ 24.

Harassment case caused by Public Servants from Police Forces and Municipal Governments." AR at USCBP00016. Plaintiff maintained that the alleged affidavit was "necessary in the event that you have been misled, or, confused and that conflict should occur between your office and the Government of Canada." AR at USCBP00016.

Plaintiff's October 28, 2019 application for judicial review purported to seek review in the Federal Court of Canada under "Section 41 of the Privacy Act of Canada" for the respondents' alleged non-compliance with that act. AR at USCBP00020. Plaintiff maintained in the application, among other things, that the respondents "have not displayed the level of honour [*sic*] and integrity required to successfully manage and operate a police force[] or, resolve, conclude and correct highly complex problems in this case." AR at USCBP00020. Plaintiff further deemed his application "part of a massive internal investigation and review to stop professional misconduct, violations of the law and an international incident," claiming the respondents had "conspired against many different governments, police forces and other well-respected organizations[.]"[4] AR at USCBP00020.

Finally, Plaintiff stated in his October 22, 2019 letter that "I am in dire need of financial assistance to complete several internal investigations concerning the criminal conduct of Police Officers and Public Service Employees[,]" work that he claimed "is supported by the Attorney General of Canada and the Supreme Court of Canada." AR at USCBP00026. Plaintiff stated that "[s]eeing as it is a case that is supported by the Supreme Court of Canada and a case that has been corrected and apologized for and affects the Canadian Charter of Rights and Freedoms[,] it seemed appropriate to Apply directly to your office for funding." *Id*.

---

[4]  Plaintiff's application appears to have been dismissed. *See* https://www.fct-cf.gc.ca/en/court-files-and-decisions/court-files (entering "T-1781-19" as the case number after selecting the "Search by court number" tab to access the "Recorded Entry Summary").

On November 15, 2019, after review of Plaintiff's submissions, CBP's Enrollment Center noted in CBP's law enforcement system—referred to as "DHS/CBP-002 Trusted and Registered Traveler Programs" and formally known as the Global Enrollment System—Plaintiff's "comments that inquiries conducted by CBP were 'excessive.'" Davies Decl. ¶¶ 14, 26. The Enrollment Center denied Plaintiff's application because Plaintiff had not assured CBP of his "low-risk status," determining that Plaintiff "should not be accepted into the NEXUS program as he was unable to provide CBP with an explanation as to his employment, how he was able to support himself financially or why he was seeking entry into the United States." Davies Decl. ¶¶ 27, 28; AR at USCBP000004. The Enrollment Center determined that Plaintiff "will benefit from a full primary inspection." AR at USCBP000004; Davies Decl. ¶ 27.

On November 15, 2019, Plaintiff requested that the Ombudsman reconsider the Enrollment Center's determination. Davies Decl. ¶ 29; AR at USCBP000004, USCBP000028. Plaintiff stated the following in support of his request for reconsideration:

> All the information requested by your officers has been provided and satisfied. The case that he was told of and provided evidence for was at the request of the US authorities in Montana. It proves a massive government error that has been determined to be by the courts to be attributed to scandal, public mischief and homosexual misconduct and misbehaviour [*sic*]. I am the victim to very sick and heinous acts done by criminals within our justice system.

AR at USCBP000028. The CBP Ombudsman sustained the Enrollment Center's determination on December 11, 2019. Davies Decl. ¶¶ 30-31; AR at USCBP000029, USCBP000031.

Plaintiff submitted another application to participate in the NEXUS program on December 14, 2019. Davies Decl. ¶¶ 32; AR at USCBP000032-35. CBP denied that application on September 16, 2020, after it conducted a risk assessment and determined that Plaintiff "did not qualify as low risk based on information in [Plaintiff's] pending application as well as the assessing officers' comments regarding [Plaintiff's] previous February 13, 2019 application." Acosta Decl. ¶ 19; AR

at USCBP000036-39. On September 17, 2020, Plaintiff requested that the Ombudsman reconsider that determination, claiming he has no "criminal record, conviction, or[] anything else that would impede or interfere and justify the denial[.]" Davies Decl. ¶ 35; AR at USCBP000042. The Ombudsman sustained the determination on September 20, 2020. Davies Decl. ¶ 37; AR at USCBP000043, USCBP000061.

### III.    Procedural History

On September 20, 2020, Plaintiff commenced this action. *See* Compl. (ECF No. 1). He seeks review of the rejections of his applications for participation in the NEXUS program, which he claimed "occurred without merit and justification," Compl. at Relief, because he "has no criminal record, files[] or[] issues that would prevent membership in the NEXUS Trusted Travelers Program." Compl. at Statement of Claim. Plaintiff further seeks "punitive damages" for the alleged "trespasses caused" by "losses in trade and other opportunities as a result of the negligent and damaging probe" because "[n]ews of the rejection circulated throughout the industry and . . .[his] community." Compl. at Relief.

On November 11, 2021, the Court granted in part and denied in part Defendant's Motion to Dismiss. *See* Nov. 11, 2021 Order (ECF No. 20). The Court disagreed with CBP that the Court lacks jurisdiction to review Plaintiff's APA claim, finding that a CBP regulation (8 C.F.R. § 235.12(b)(2) (2020)) identifies "factors that may disqualify an applicant's eligibility for its Global Entry program," "[t]hose same factors apply to eligibility for the NEXUS program," and that the factors "supply a judicially manageable standard for review." Nov. 11, 2021 Order at 2-3. The Court dismissed Plaintiff's claimed monetary damages under the APA as "foreclosed by the plain text of the statute" and found Plaintiff unable to proceed on a tort claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80, for failure to plead that he exhausted his administrative remedies. Nov. 11, 2021 Order (ECF No. 20) at 3.

**LEGAL STANDARD**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that there "is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Generally, the party moving for summary judgment bears the initial responsibility of showing an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, whereas here, a plaintiff challenges agency action under the APA, a district court "sits as an appellate tribunal" and "[t]he entire case on review is a question of law." *Ass'n of Private Sector Colls. & Univs. v. Duncan*, 110 F. Supp. 3d 176, 184 (D.D.C. 2015) (quoting *Am. Biosci., Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). "And that question of law is: based on the record, did the agency act in an 'arbitrary' or 'capricious' manner or otherwise violate the law?" *Id*. (citing 5 U.S.C. § 706(2)).

**ARGUMENT**

The APA authorizes a reviewing court to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The Court, however, is to "assess only whether the decision was 'based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). There was no clear error of judgment here.

CBP promulgated 8 C.F.R. § 235.12(b)(2), which contains factors that can disqualify an applicant from participation in the Global Entry program. These factors inform CBP's criteria for ineligibility to participate in the NEXUS program:

- The individual provides false or incomplete information on his or her application;

- The individual has been convicted of a criminal offense in any country;

- The individual is a subject of an ongoing investigation by any federal, state or local law enforcement agency in any country;

- The individual has been found to have violated any customs, agriculture, or immigration regulation or laws in any country;

- The individual is inadmissible to the United States or Canada under applicable immigration laws or regulations, including applicants with approved waivers of inadmissibility or parole documentation;

- The individual does not intend to lawfully reside in either Canada or the United States for the term of his or her NEXUS membership; or

- The individual cannot satisfy CBP of his or her low-risk status or meet other NEXUS program requirements.

Nov. 11, 2021 Order at 2; 75 Fed. Reg. 82202; *see also* 74 Fed. Reg. 59,935; https://www.cbp.gov/travel/trusted-traveler-programs/nexus/nexus-eligibility.

CBP denied both of Plaintiff's applications because of Plaintiff's failure to assure CBP of his low risk to national and border security, which is supported by the rational basis for CBP's action contained in the administrative record. *See Roberts v. Napolitano*, 792 F. Supp. 2d 67, 74 (D.D.C. 2011) (citing *Ethyl Corp. v. EPA*, 541 F.2d 1, 34 (D.C. Cir. 1976)) (a court must "affirm the agency's decision as long as a rational basis for that decision exists."). The administrative record reflects that Plaintiff considered CBP's inquires "excessive," failed to provide a basis for a source of income and failed to permit CBP to discern the reason for Plaintiff's travel to the United States. AR at USCBP00023 (emphasis omitted). "Thus, CBP concluded that it would be best for [Plaintiff] to undergo full primary inspection upon arrival to the United States." Davies Decl. ¶ 27.

More specifically, regarding Plaintiff's first application, "███████████████████ ███████████████████████████████████████████████████████████████████████████ . [Plaintiff's] attempt to provide evidence against the Government of Canada and the articulation that he was seeking to uncover cross-border corruption worth two billion dollars." Davies Decl.

¶ 27. Thereafter, upon consideration of "the additional documentation submitted by . . . [Plaintiff], which further focused on the investigation of corruption, [CBP] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, given language in one of the letters about CBP's inquiries being 'excessive.'" Davies Decl. ¶ 27. "It is important for members of [Trusted Traveler Programs] to cooperate with CBP and be forthcoming with information so that the agency can ensure the individual's risk to border security throughout their duration of membership in the program." Davies Decl. ¶ 27.

Moreover, "part of the determination of whether an applicant poses risk to the integrity of the NEXUS program, as well as to national and border security more broadly, necessarily includes an officer's discretion informed by training, knowledge, and experience." Davies Decl. ¶ 9. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Davies Decl. ¶ 30.  And CBP denied Plaintiff's second application ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Davies Decl. ¶ 32. In other words, upon consideration of the information provided by Plaintiff and other information available to CBP as part of its risk assessment process, CBP determined that Plaintiff failed to satisfy CBP of his low-risk status, a decision in accordance with CBP's criteria for ineligibility to participate in the NEXUS program that is neither arbitrary, capricious, nor an abuse of discretion.

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendant's Motion for Summary Judgment.

Dated: January 14, 2022
       Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By:      /s/ *Michael A. Tilghman II*
MICHAEL A. TILGHMAN II
D.C. Bar #988441
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
(202) 252-7113

*Attorneys for the United States of America*