UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEX MARTINEZ, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| U.S. CUSTOMS AND BORDER PROTECTION, | ) ) ) ) |
| Defendant. | ) ) ) |

Case No. 20-cv-2726 (APM)

**MEMORANDUM OPINION**

**I.**

NEXUS is a joint trusted traveler program between the United States and Canada. *See* Utilization of Global Entry Kiosks by NEXUS & SENTRI Participants, 75 Fed. Reg. 82,202, 82,202 (Dec. 29, 2010). The program "allows pre-approved, low-risk travelers expedited processing for travel between the United States and Canada at dedicated processing lanes at designated northern border ports of entry, at NEXUS kiosks at U.S. pre-clearance airports in Canada, and at marine reporting locations." *Id.* An applicant must voluntarily submit to thorough background checks by U.S. and Canadian authorities, as well as sit for a personal interview with U.S. Customs and Border Patrol ("CBP"). *See id.* Both U.S. and Canadian authorities must approve an individual's application to join the NEXUS program. *See id.*

CBP has published seven "risk factors" that "may disqualify an individual from NEXUS participation." *Id.*[1]; *see also* 8 C.F.R. § 235.12(b)(2) (setting forth the same seven "disqualifying

---

[1] The seven disqualifying factors are:

- The individual provides false or incomplete information on his or her application;
- The individual has been convicted of a criminal offense in any country;

factors" for the Global Entry program).  The last of the seven, and the one relevant to this case, is if "[t]he individual cannot satisfy CBP of his or her low-risk status or meet other NEXUS program requirements."  Utilization of Global Entry Kiosks, 75 Fed. Reg. at 82,202.

In 2019, Plaintiff Alex Martinez, who proceeds pro se, filed two applications for NEXUS program admission.  Def.'s Mot. to Dismiss, ECF No. 15, Decl. of Pete R. Acosta, ECF No. 15-2 [hereinafter Acosta Decl.], ¶ 17.  CBP denied both applications.  *Id.*  Plaintiff then brought this action under the Administrative Procedure Act ("APA") to challenge CBP's decisions.  Compl., ECF No. 1.  In a prior Order, the court denied CBP's motion to dismiss, which argued that the court lacked jurisdiction to address Plaintiff's APA claim because a decision to grant or deny a NEXUS application is committed to agency discretion by law and therefore is not judicially reviewable.  Order, ECF No. 20, at 2.  The court held that CBP's disqualifying factors "are 'self-imposed constraints' that supply a judicially manageable standard of review."  *Id.* (citing *Ctr. for Auto Safety v. Dole*, 846 F.2d 1532, 1534 (D.C. Cir. 1988)).

The question now before the court is whether the CBP acted arbitrarily and capriciously by denying Plaintiff's two NEXUS applications.  It did not.  Accordingly, Defendant's motion for summary judgment is granted and Plaintiff's cross-motion is denied.  *See* Def.'s Mot. for Summ.

---

- The individual is a subject of an ongoing investigation by any federal, state or local law enforcement agency in any country;
- The individual has been found to have violated any customs, agriculture, or immigration regulation or laws in any country;
- The individual is inadmissible to the United States or Canada under applicable immigration laws or regulations, including applicants with approved waivers of inadmissibility or parole documentation;
- The individual does not intend to lawfully reside in either Canada or the United States for the term of his or her NEXUS membership; or
- The individual cannot satisfy CBP of his or her low-risk status or meet other NEXUS program requirements.

Utilization of Global Entry Kiosks, 75 Fed. Reg. at 82,202.

J., ECF No. 27 [hereinafter Def.'s Mot.][2]; Pl.'s Opp'n & Cross-Mot. for Summ. J., ECF No. 31 [hereinafter Pl.'s Mot.].

## II.

The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "This is a 'narrow' standard of review as courts defer to the agency's expertise." *Ctr. for Food Safety v. Salazar*, 898 F.Supp.2d 130, 138 (D.D.C. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). But even under this standard, an agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (internal quotation marks omitted).

With these principles in mind, the court addresses CBP's refusals to grant Plaintiff's NEXUS applications in the order in which they were filed.

## III.

### A.

On February 13, 2019, Plaintiff submitted his first application for the NEXUS program, J.A., ECF No. 38 [hereinafter J.A.], at USCBP000007–USCBP000010,[3] which CBP denied on

---

[2] With its motion for summary judgment, CBP has submitted the Declaration of Matthew S. Davies, the agency's Executive Director for Admissibility and Passenger Programs. *See* Def.'s Mot., Decl. of Matthew S. Davies, ECF No. 27-2. CBP has not demonstrated that resorting to extra-record evidence is warranted. "[I]t is black-letter administrative law that in an APA case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision." *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) (per curiam) (internal quotation marks omitted). The exceptions to this rule "are quite narrow and rarely invoked," and are "primarily limited to cases where the procedural validity of the agency's action remains in serious question, or the agency affirmatively excluded relevant evidence." *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) (cleaned up). This is not a "procedural validity" case so the "quite narrow" exception does not apply. Accordingly, the court has not considered any evidence contained in the Davies Declaration that is not otherwise reflected in the administrative record.

[3] The court uses the Joint Appendix's internal pagination when citing to its exhibits.

3

November 15, 2019, *see* Acosta Decl. ¶ 17.  Plaintiff had not demonstrated "low-risk status" to the agency's satisfaction.   J.A. at USCBP000004, USCBP000006 (███████████████████████████████████████████████).  That very same day, Plaintiff submitted a request for reconsideration.  J.A. at USCBP000028–USCBP000030.  On December 11, 2019, CBP sustained the denial of Plaintiff's initial application.  J.A. at USCBP000031.

The administrative record reflects a "rational connection" between the facts the agency found and the choice it made.  *State Farm*, 463 U.S. at 43 (internal quotation marks omitted).  During his CBP interview on November 12, 2019, J.A. at USCBP000015, Plaintiff advised that he had been "unemployed since 2012, claim[ed] to be working for free to uncover cross border corruption, claim[ed] this case is worth 2 billion dollars" and that "he needed a nexus card because he wants to collect his 2 billion dollars."  J.A. at USCBP000004, USCBP000006.  The CBP officer assessed that Plaintiff "████████████████████████" *Id.*  Plaintiff also attempted to give the CBP officer "a USB drive that had 'material evidence' on it against [the Canada Border Services Agency] and the [Royal Canadian Mounted Police]," which the officer refused to accept.  *Id.*  Plaintiff did, however, manage to provide some documents to the CBP.  A letter dated November 11, 2019, purports to include "'evidence' from a case and file that caused an international incident." J.A. at USCBP000016.  In another letter, dated November 13, 2019, Plaintiff commented that the inquiries conducted by CBP were "excessive," J.A. at USCBP000023, and he attached a letter he had submitted to Canadian authorities for financial assistance as a victim of "Crime Resulting from Internal Investigations Concerning the Criminal Conduct of Police Officers and Public Service Employees."  J.A. at USCBP000026.  And when Plaintiff sought reconsideration of his denial on November 15, 2019, he claimed to be a "victim to very sick and heinous acts done by criminals within our justice systems," and said of the case he referenced during his interview, it "proves a

massive government error that has been determined to be by the courts to be attributed to scandal, public mischief and homosexual misconduct and misbehaviour." J.A. at USCBP000028.

Based on the foregoing evidence and the CPB's assessment of it, CPB did not act arbitrarily and capriciously in finding that Plaintiff was not a "low-risk" applicant. J.A. at USCBP000004, USCBP000006 (reflecting Ombudsman's finding that "████████████████████████"; application reviewer concluding that "████████████████████████████████████" and observing that "Applicant will benefit from a full primary inspection").

**B.**

On December 14, 2019, Plaintiff submitted a second application for the NEXUS program, J.A. at USCBP000032–USCBP000035, which CBP denied on September 16, 2020, J.A. at USCBP000040–USCBP000041. On September 17, 2020, Plaintiff submitted a request for reconsideration, J.A. at USCBP000042, which the agency quickly declined on September 20, 2020, J.A. at USCBP000043, USCBP000061. CBP rejected Plaintiff's second application for the same reason as his first: he had not demonstrated his "low-risk status" to the agency's satisfaction. J.A. at USCBP000037, USCBP000043 (████████████████████████████████████).

As was the case with the first, the administrative record reflects a "rational connection" between the facts the agency found and the choice it made with respect to the second application. *State Farm*, 463 U.S. at 43. CBP prepared a Risk Assessment Worksheet after Plaintiff reapplied. J.A. at USCBP000036–USCBP000039. The risk assessor noted, based on his review of the file, that "████████████████████████" and that he was "████████████████████████ ████████████████████" J.A. at USCBP000037. A reviewing officer also noted "████████████████████████████████████████████████████████████████" *Id.* Plaintiff sought reconsideration, insisting that he qualified for the program because he lacks any

"criminal record, conviction, or, anything else that would impede or interfere and justify the denial." J.A. at USCBP000042. But the supervisory Ombudsman determined that there was "[n]o change from the previous Ombudsman review" and sustained the denial "███████████ ███████." J.A. at USCBP000043.

Once again, the record supports CPB's determination that Plaintiff did not demonstrate "low-risk status." The agency's refusal to grant his second application therefore was not arbitrary and capricious.[4]

### IV.

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 27, is granted. Plaintiff's Opposition and Cross-Motion for Summary Judgment, ECF No. 31, is denied. A final, appealable order accompanies this Memorandum Opinion.

Dated: July 08, 2022

Amit P. Mehta
United States District Court Judge

---

[4] Three months after the close of summary judgment briefing, Plaintiff offered additional evidence to show that CBP improperly denied his NEXUS program applications. *See* Pl.'s Letter, ECF No. 41. The court has not considered that evidence for the same reason it declined to consider supplementary proof presented by the agency: "[j]udicial review of agency action under the APA is generally confined to the administrative record." *Cape Hatteras Access Pres. All. v. Dep't of Interior*, 667 F.Supp.2d 111, 114 (D.D.C. 2009) (citing 5 U.S.C. § 706).